We'll hear the final case on the calendar, Smith v. City of New York. Thanks. Good morning, your honor. May it please the court. My name is Erica Dubno of Farringer and Dubno, and I represent the appellant Theodore Smith. We are here today because an extraordinary educator has been permanently barred and terminated based in retaliation for speeches that he made in an effort to protect the students and the public in public schools in New York. It's important to recognize that we're here on a motion to dismiss under rule 12B6 and such a motion, the plaintiff's complaint has to be reviewed with all inferences drawn in favor of the plaintiff. Can we get to the collateral estoppel issue in this case? Certainly, I welcome that, your honor. You have the district court in Smith 1 granting summary judgment for the defendants concluding that the findings of the section 3020A hearings that DOE, the Department of Education, had just caused for taking adverse employment actions against Smith, and the actions were not based on retaliation. So why aren't we here precluded under the doctrine of collateral estoppel from re-litigating this issue in this case? Yeah, I welcome that question, your honor. Collateral estoppel is, of course, issue preclusion, and it requires identity and identical issues there. The retaliation claim that was raised in Smith 1 was based upon his age, being over 40 years old. It was based upon his medical situation. It was not based upon the First Amendment claims that were made. And therefore, collateral estoppel would not apply because there's no identity of issues there. But didn't his First Amendment claims arise at or about the same time as the other claims arose? I believe that the initial claim did arise at that time. He can't parse them out. Under New York law, he has to decide to raise them all or lose some of them, doesn't he? My understanding was it was his belief that he was unable to raise it at that time. His belief doesn't do it. The question is for you, under New York law or under our law, I mean, because we're talking about the legitimacy of a 3028 hearing determination and its preclusive effects. Wasn't he required to raise all of those at the time of the original proceeding? The original proceeding was done, it was filed while the proceedings were still going on in front of the 3020 proceedings and the state proceedings were still going on. But ultimately, the 3028 proceedings finished and then the district court gave a preclusive effect to that to dismiss the complaint the first time, right? Or am I wrong about that? She did, but she also limited the complaint. What happened was- There was no appeal taken, right? That's where it was going, right? There's no appeal. That is correct, Your Honor. I mean, it might have been wrong. It's conceivable because there's some case law that says that a 3028 does not have preclusive effects with regard to certain civil rights claims, but that wasn't litigated and had an opportunity to do so. And isn't he then stuck with that? At this point, the claims relating to his retaliation for his first amendment relating to his termination, that could not have been raised in Smith 1. Because his termination, he did not learn of his termination until after the Smith 1 complaint was filed. And therefore, Judge Buchwald said that the race judicata determination does not bar any claims that arose prior to the date of the second amended complaint, Your Honor. The question is whether they're timely or not, right? That was the issue that has been raised, which is a statute of limitations claim. A statute of limitations claim is strictly construed at this initial stage of the proceeding. You have to look at the complaint and hear- When was he terminated? He was terminated on, I believe, October, I apologize, one moment, please. I believe he was officially terminated on October 9th, 2007. Yes, and when did he raise the first amendment termination claim, 2016, or 12,000? I apologize, Your Honor, that date was incorrect, I apologize. That was not the termination date, that was, yeah, it was 2010, I apologize, Your Honor. 2010, right. But then his claim, he filed his complaint when, in 2016? 2014, Your Honor. That's four years. That is correct, Your Honor, but- So it's untimely. We've, two things. Number one, when you look at the complaint, for a statute of limitations claim, you look at the complaint, and the complaint alleges a continuing offense. It also- But his claim is he was terminated. It sounds like a done claim to me. The claim is also not just that he was terminated, the claim was that he was put on the no hire list. Yeah, but there I don't, honestly, I don't see even the merits of that. But in any event, his complaint is what, 2014? That is correct, Your Honor. And actually, he says that he didn't know that he had a complaint until after he got the notice of the no termination. But he actually commenced his action before he got the no termination, right? That is correct, Your Honor, but- That seems like a curious position to me. We're in a situation where he didn't learn that the termination. A lot of people, my understanding is a lot of people are terminated, but that doesn't mean they're placed on the no hire list. What right does he have to be rehired? What civil right does he have to be rehired? And how is he discriminated against because he's not hired just like a lot of other people aren't hired that they don't want to hire? He has a right to work, Your Honor. He had a license that was taken away from him. Excuse me, he does not have a right to work for the cities of New York, for the school districts of New York. He does not have a civil right to work there. If they terminated him, and his claim for termination is no longer timely, his claim, you would agree with me that his claim for termination was ripe at the time of his termination, wouldn't you agree with me on that? That is correct, Your Honor. All right, so then you say, well he had, something else happened after that, and that should be, he should have a claim for that, right? He was left with the impression that he could always reapply for employment. He was told time and time again by the TRS, which is the Teacher's Retirement System, which was under the aegis of the DOA, the Department of Education. The Teacher's Retirement System is not the agent of the city of New York. In the 2007 decision of the Special Commissioner of Investigation recommended that he be placed on the ineligible list. That was clearly an issue from as far back as 2007. Your Honor, my understanding is that there's a difference between the ineligible list and the no hire list. A no eligible list is not necessarily a full termination, which would bar him from ever working again anywhere in the district. It's a big difference between the no hire, which is a permanent bar, which prevents him from ever working again. Isn't that simply, though, a downstream effect of his termination rather than being a separate additional retaliatory act? I'm sorry, say it again, Your Honor. The placement on the no hire list, I'm trying to understand why it would constitute a separate retaliatory act. It seems like just a consequence of termination. You're terminated, and then you're put on the no hire list. In this situation, we believe that there was a direct causal connection between the termination, the retaliatory termination, and the ultimate placing on the no hire list. It all flowed directly from the initial retaliation. And what's important to note is that he was retaliated against for expressing speech. It was done not just through internal channels through the DOE. This was well beyond. He contacted the mayor's office. This is something that any civilian could have done. There's clearly a civilian analog. Any parent or teacher, any parent or student who was concerned about overcrowding could contact the mayor. It's important to note that Judge Buchwald completely ignored that in her decision. She identified the fact that he filed internal complaints, but never addressed the fact that he complained directly to the mayor. And I think when you're dealing with somebody who has expressed a concern about something so important and dangerous as overcrowding in the school system, they certainly have a right to be heard on that. Thank you, Your Honor. Thank you very much. Thank you. May it please the court. Jonathan Popolo for Appalese. I just wanted to return briefly to one of the collateral estoppel issues that was raised. I think certainly it is correct that the finding of collateral estoppel in Smith 1, since it was not appealed, is now collateral estoppel now and can't be revisited. And the only sort of argument that I heard to try to get out of that was that the difference between they were bringing age and disability discrimination claims in Smith 1, and now they're bringing First Amendment claims. But the relevant issue, and we put this forth in our brief, is that any type of retaliation claim in this context requires a causal connection between the protected activity and adverse employment action. And that's exactly what was found in Smith 1 to be precluded by the collateral estoppel effect of the first 3020A hearing. So there's no valid distinction now to just say, okay, now I'm taking the same factual predicate, and I'm calling it a First Amendment claim. Whereas before I took the same factual First Amendment retaliation claim, before I took the same factual predicate, and I said it was an age. Well, could he, could he, could he, Smith have brought the First Amendment retaliation, First Amendment retaliation claim in Smith 1 even though his termination and placement on a no higher list had not happened yet? Absolutely. At that point, a lot of the acts of retaliation that he was claiming had already occurred. He was claiming that he received disciplinary letters. He'd received a U rating. He'd been served with disciplinary charges. The first 3020A hearing had concluded and he'd been suspended for one year. I mean, he absolutely could have brought a retaliation claim at that point. And in fact, he did bring a section 1983 claim in Smith 1. He didn't include First Amendment retaliation, but he says in his complaint in this case that when they brought this suit, that he expressed concerns regarding the violation of his First Amendment rights, but decided not to bring it. So clearly, he was aware of the possibility of bringing it at that time. Because the 3020A are the keys to being able to dismiss him. He's tenured, right? Believe that's the case, Your Honor. I mean, I think certainly, I don't know if they could have done the suspension without the hearing. I mean, there was other conduct. Ultimately, what was the relief sought in the 3020A hearing? The relief- By the school district. Did they seek to terminate him as a result of that? I don't believe they did in the first one. They did- All right, so- All right, so- Not positive, but that's- And the litigation in Smith 1 was about the 3020A process? No, the litigation in Smith 1 was he brought a variety of claims. He basically alleged that when he complained about his class size, he complained about his class size because of its effect on his health. And he brought discrimination claims under- When was the 3020A process completed? The first hearing, the decision was rendered in the end of 2007. 2007? Correct. End of 2007. And when was Smith 1 filed in the district court? 2006. 2006, okay. It was stayed initially. Huh? It was initially stayed pending the resolution. Pending the end of the 3020A hearing. And Smith 1 was decided in the federal court when? 2011. Okay, so after the 3020A had been completed? The first, yeah, actually after both of them had been completed, yes. Both had been completed. Had he been terminated by the time Smith 1 was completed? By the time it was completed, yes. Okay, because he was terminated in 2010. He was terminated in June of 2010. Did he at any time seek to amend, but Smith 1 had been commenced prior to his termination? Correct, Your Honor. Okay. Now, in light of that, there's a case called Lignani versus El Itali Airlines that says that where you commence a proceeding with regard to a discrimination. It's not a teacher case, okay? But then you're later dismissed in retaliation for having even commenced the initial or raised the initial discrimination complaints. That you're not precluded from raising that later claim just because you went and started your first lawsuit. So there's a line of authority that says that his termination claim is not precluded. The district court dealt with that in the decision below. They said that the operative complaint was one that was a bit of a tricky situation because I guess they were given leave to file and it wasn't filed correctly. But I think the court laid it out very clearly what happened there and judged the operative complaint as a June 2, 2010 complaint. So the court was very careful and said, you know what, I can't say for certain that as of June 2, 2010, he was aware of his termination. The arbitrator's decision to recommending termination was June 1, 2010. So what the court did is said that, all right, race judicata bars everything else. But I'm going to alternatively look at collateral estoppel in the context of that claim and found that one on collateral estoppel and statute of limitations. So in Smith 1, Judge Buchwald says the 3020A stuff decides all of his potential claims including possible termination. Correct. All right. And he takes no appeal? Correct. Thank you. Let's say that we were to determine that Smith's claim is not barred by race judicata or collateral estoppel or is not time barred. If we look at, we take the facts in the complaint as true and then draw the inferences in Smith's favor, why doesn't the complaint, the Smith complaint to the mayor and to the chancellor constitute speech by a citizen on a matter of public concern? I think when you look at the entire paragraph of the complaint where that comes up in context, it's clear that it's not plausible that he's talking about a matter of public concern. It starts out, it says defendants. Talking about overcrowding of class. Well, but no, he says, he says it was evident defendants were conspiring to have him terminated before the problem regarding the classrooms because principal Ewing continuously placed disciplinary letters, etc. Then he says exasperated concern, plaintiff lodged several complaints with the union and then they continued the campaign of retaliation. The inference, I think the only fair inference from that is that he was complaining about the treatment of him. He was not complaining, he was not bringing a broad safety concern to the mayor. He was complaining about a specific instance and he was actually complaining about the context of how he was being treated which is what differentiates it from the Matthews case that is cited in all of our briefs. Where there you had a police officer complaining, first of all, not just about a specific incident that he dealt with. For example, the analog would be, you know, here Smith, Mr. Smith is complaining about his classroom. This is a policeman who was complaining about, you know, what he had to do on one or two particular instances. The policeman was not doing that in Matthews. He was complaining about a policy, a complete policy of the police department that was undeniably, you know, a matter of public concern. In this case, you have a teacher complaining about the conditions of his classroom. And when he complained about it the first time in Smith 1, he complained about it not on the grounds that student safety was being jeopardized but on the grounds that it was hurting his health and he wasn't being accommodated and that's why he brought discrimination claims. So I think that's what takes it outside the realm of Matthews and makes it not protected activity for a First Amendment retaliation claim if you clear all the other hurdles with statute of limitations, race judicata and collateral estoppel. Thank you. Thank you, Your Honor. At first, I'd just like to point out that what the city is doing is, you know, parsing the complaint and saying, well, you know, it's got to mean X and it's got to mean Y. I think you have to recognize that on a 12B6 motion, all inferences have to be drawn in favor of the plaintiff. Number two, the letter to the mayor is not in the record and certainly to be speculating about what it says, I think certainly we could have a remand on it to introduce it into the record and see what it actually says without speculating and dismissing someone's complaint based on that pure speculation. Relating to a retaliatory motive, I believe Judge Wesley was talking about the Reed versus A.W. Lawrence case which says that a retaliatory motive can play a part in a discharge even if it may not be the only basis for the discharge and we certainly rely on that authority. Relating to the claim that Mr. Smith had, you know, raised this issue or thought about raising the First Amendment issue during Smith 1 and didn't, I believe what the document actually says, the brief says that he raised it to his attorney David Carney and Carney said not to raise it. Carney is the same person who claimed that there was a threat and put in a 98-page ex parte affidavit, is no longer practicing law and is nowhere available to be cross-examined. So, you know, the fact that the claim was that it was made to Carney and then Carney didn't raise that certainly demonstrates the prejudice to Mr. Smith. And finally, while it is true that Arbitrator Weinstock's decision came down on June 1 and the complaint in this case was filed on June 2, the parties didn't learn about the decision from Judge Weinstock until after the complaint was filed. Thank you, Your Honor. Thank you. Thank you both for your thoughtful arguments. The court will reserve decision. The clerk will adjourn court. Court is adjourned.